UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES MATHIS, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 8024 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| IMHOTEP CARTER, HOLLI LOGAN, MARCUS HARDY, and DARRYL M. EDWARDS, | ) | |
| | ) | |
| Defendants. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Charles Mathis filed this suit under 42 U.S.C. § 1983 against Marcus Hardy, Darryl Edwards, Imhotep Carter, and Holli Logan, alleging deliberate indifference to his medical needs in violation of the Eighth Amendment. Doc. 1. At all relevant times, Mathis was an inmate at Stateville Correctional Center; Hardy was Stateville's warden; Edwards was its assistant warden of programs; Carter was its medical director; and Logan was a nurse. *Id.* at 2-3. The court recruited counsel on Mathis's behalf, Docs. 44, 45, and Mathis later retained additional counsel, Docs. 50, 52, 55. Discovery has closed, and a jury trial is set for April 24, 2017. Doc. 175. Defendants have moved for summary judgment, and also to strike certain exhibits submitted by Mathis. Docs. 165, 168, 188. The motions are granted.

**Background**

The following facts are stated as favorably to Mathis as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Defendants' motions, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

Mathis had a pacemaker when he entered state prison in 2005. Doc. 182 at ¶ 9. On August 15, 2011, he had pacemaker replacement surgery at an outside hospital. *Id*. at ¶¶ 13-14. There were no apparent clinical problems with the surgical site when he was discharged on August 16, *id*. at ¶ 15, and there were no signs of infection when Dr. Carter saw him at Stateville later that day. *Id*. at ¶ 19; Doc. 185 at ¶ 8. Dr. Carter prescribed some pain medication and antibiotics to ward off infection. Doc. 182 at ¶ 20; Doc. 185 at ¶ 8.

Mathis soon became concerned about how the surgical site felt and looked. Doc. 192 at ¶ 4. He experienced pain and light bleeding, and felt something protruding from his chest area. Doc. 185 at ¶ 13. On August 23, he went to Stateville's Healthcare Unit but was not seen by a doctor. *Id*. at ¶ 11. On August 25, he submitted an emergency grievance to the Warden's office, claiming that he was experiencing pain and still had not been seen by a doctor. *Id*. at ¶ 12. That is the only grievance Mathis submitted that is related to this lawsuit. Doc. 182 at ¶ 5. The next day, on August 26, Mathis was taken to the Healthcare Unit and seen by a nurse (not Logan) because Dr. Carter was unavailable. Doc. 185 at ¶ 13.

On August 28, Logan walked by Mathis's cell during her medicine rounds. Doc. 181 at ¶ 31. Mathis asked for help and showed her the incision; Logan told him that it was infected but that nobody was available to take care of it. *Ibid*. Medical technician Andrea Bacot took Mathis to the Healthcare Unit later that day. Doc. 185 at ¶ 16. Bacot noticed redness and dried mucus at the surgical site, and she cleaned and dressed it. *Id*. at ¶¶ 16-17. Mathis's medical records show that there was no medical emergency or need to see a doctor that day. *Id*. at ¶ 18.

Beginning on August 23, Mathis sent letters to Hardy and Edwards through the regular prison mail stating that he needed to be seen by a doctor about an infection in his chest. *Id*. at

¶¶ 9, 19; Doc. 192 at ¶¶ 4-5.  Mathis saw Hardy and Edwards before August 30 and reiterated his need to be examined.  Doc. 185 at ¶ 26.  Hardy told Mathis that he would "take care of it."  *Ibid*.

Dr. Carter examined Mathis on August 30.  *Id*. at ¶ 20.  He observed mild surface inflammation at the surgical site and concluded that it was infected, but saw no evidence that the infection was spreading.  *Id*. at ¶¶ 20-21.  Dr. Carter prescribed a ten-day course of broad-spectrum antibiotics and scheduled an appointment a week later.  *Id*. at ¶ 20; Doc. 182 at ¶ 48.  A broad-spectrum antibiotic treats a wide variety of infections, which can make it unnecessary to identify the specific bacterium causing the infection.  Doc. 182 at ¶ 49.  The Warden's Office returned Mathis's grievance the next day, declining to treat it as an emergency.  Doc. 185 at ¶ 22.

Mathis was scheduled for a follow-up appointment on September 8, but it was cancelled due to a lockdown.  *Id*. at ¶ 23.  Dr. Carter next saw Mathis on September 13.  Doc. 182 at ¶ 52.  Mathis's medical chart indicates that the site was clean and uninfected and that he otherwise appeared healthy.  *Id*. at ¶ 53; Doc. 185 at ¶ 24.  Dr. Carter prescribed a triple antibiotic ointment to prevent the inflammation from returning.  Doc. 182 at ¶ 56.

Dr. Carter saw Mathis again on September 26.  Doc. 185 at ¶ 25.  He noted that Mathis's vital signs were stable and that the surgical site appeared healthy, but that Mathis was still experiencing pain in his chest area.  *Ibid*.  Dr. Carter testified that the pain was caused by the surgery itself and the normal healing process.  Doc. 182 at ¶¶ 63-64.  Mathis asserts that those opinions were not founded on medical science or a reasonable degree of medical certainty.  *Ibid*.

## Discussion

### I. Claims Against Nurse Logan

Mathis's claims against Logan cannot proceed because he failed to exhaust his administrative remedies against her.  The Prison Litigation Reform Act states that "[n]o action

3

shall be brought with respect to prison conditions under section 1983 … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 532 (2002); *Hernandez v. Dart*, 814 F.3d 836, 841-42 (7th Cir. 2016). Exhaustion of available administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo,* 548 U.S. 81, 90 (2006). To satisfy the exhaustion requirement, a prisoner "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Illinois law required Mathis to file a grievance with Stateville's grievance officer within sixty days of the discovery of the problem, naming each person involved. *See* 20 Ill. Admin. Code § 504.810; *Hernandez*, 814 F.3d at 842 (applying a similar rule).

Logan argues that Mathis did not satisfy this exhaustion requirement as to her because he never filed a grievance regarding her actions. Doc. 167 at 15-16. She is correct. Mathis's lone grievance, submitted on August 25, predates Logan's alleged misconduct and, not surprisingly, does not mention her. Doc. 182 at ¶ 5 (showing that Mathis's only grievance was completed on August 25); Doc. 181 at ¶ 31 (showing that Mathis's interactions with Logan occurred no earlier than August 28). Therefore, Mathis's claims against Logan are dismissed on exhaustion grounds. *See Ambrose v. Godinez*, 510 F. App'x 470, 472 (7th Cir. 2013); *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011); *Burrell v. Powers*, 431 F.3d 282, 285 (7th Cir. 2005).

The dismissal of those claims is without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice"); *Walker v. Thompson*, 288 F.3d 1005, 1009) (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar the reinstatement of the suit unless it is too late to

exhaust."). That said, because the time for Mathis to exhaust has expired, there may be no practical distinction between a dismissal without prejudice and a dismissal with prejudice.

## II. Claims Against Medical Director Carter, Warden Hardy, and Assistant Warden Edwards

The Eighth Amendment entitles prisoners to "adequate medical care." *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006); *see also Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. She is not entitled to the best care possible. She is entitled to reasonable measures to meet a substantial risk of serious harm to her."). To prevail on his claim against Carter, Hardy, and Edwards, Mathis must show that they "display[ed] deliberate indifference to a serious medical need." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 301 (7th Cir. 2010); *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference has an objective element, that Mathis's medical condition have been "objectively serious," and a subjective element, that Defendants "acted with a sufficiently culpable state of mind" in that they had "subjective knowledge of the risk to the inmate's health and … disregard[ed] that risk." *Thomas*, 604 F.3d at 301.

"An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation marks omitted). "A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Ibid.*; *see also Reed v. McBride,* 178 F.3d 849, 852-53 (7th Cir. 1999).

The subjective element requires the plaintiff to "show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have

5

subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Gayton*, 593 F.3d at 620 (internal quotation marks and citation omitted); *see also Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) ("[T]he subjective prong of the deliberate indifference claim … requires that the official must have actual, and not merely constructive, knowledge of the risk in order to be held liable …."). A plaintiff "need not present direct evidence of the official's state of mind: Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Gevas*, 798 F.3d at 480 (internal quotation marks omitted); *see also Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006); *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005).

The court examines the totality of the medical care to determine whether the prisoner suffered "the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Gamble*, 429 U.S. at 104 (internal quotation marks and citation omitted); *see also Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997). The fact that a prisoner has received some medical treatment does not necessarily defeat his claim, because deliberate indifference to a serious medical need can be manifested by "blatantly inappropriate" treatment "likely to seriously aggravate his condition," *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005) (internal quotation marks omitted), or by "woefully inadequate action" or no action at all, *Reed*, 178 F.3d at 854. That said, isolated incidents of delay, medical malpractice, or a mere disagreement with a doctor's medical judgment does not rise to the level of deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Walker*, 233 F.3d at 501; *Gutierrez*, 111 F.3d at 1375.

For the reasons set forth in detail below, even assuming that Mathis's post-surgical symptoms rose to the level of an objectively serious medical condition, the summary judgment record would not allow a reasonable jury to find that Carter, Hardy, or Edwards consciously disregarded those symptoms. Mathis therefore cannot satisfy the subjective element of his Eighth Amendment deliberate indifference claim. *See Chambers v. Mitcheff*, 499 F. App'x 587, 592 (7th Cir. 2013) (affirming summary judgment where the plaintiff prisoner "failed to present evidence from which a jury might reasonably infer that [the defendants] disregarded his serious medical needs"); *Rones v. Schrubbe*, 451 F. App'x 585, 587 (7th Cir. 2011) (same, where the plaintiff prisoner "produced no evidence showing that the nurses knowingly disregarded a serious medical condition"); *Williams v. Guzman*, 346 F. App'x 102, 105-06 (7th Cir. 2009) (rejecting a prisoner's medical care claims, including a claim for delay in treatment, due to the plaintiff's failure to show that "a state official was deliberately, that is subjectively, indifferent" to his medical needs); *Duckworth v. Ahmad*, 532 F.3d 675, 679-82 (7th Cir. 2008) (affirming summary judgment where "there [was] no evidence that [the defendants] knew of and disregarded the [plaintiff's] risk of cancer").

### A. Dr. Carter

Dr. Carter saw Mathis three times after Mathis became concerned about his surgical site: on August 30, September 13, and September 26. Doc. 182 at ¶¶ 43, 52; Doc. 185 at ¶ 25. On August 30, Dr. Carter prescribed a ten-day course of a broad-spectrum antibiotic. Doc. 182 at ¶ 48. As noted, this type of antibiotic covers a wide variety of infections and can make it unnecessary to identify the specific microbe in question. *Id*. at ¶ 49. Dr. Carter scheduled a follow-up appointment for September 8, which was pushed back to September 13 due to a lockdown. *Id*. at ¶¶ 51-52. Dr. Carter recorded in Mathis's medical chart that the surgical site

appeared healthy and uninfected on September 13, and he prescribed a topical antibiotic to prevent an infection from reoccurring. *Id.* at ¶¶ 53-54, 56. When Dr. Carter saw Mathis again on September 26, the inflammation had not returned. Doc. 185 at ¶ 25.

On these facts, a reasonable jury could not find that Dr. Carter acted with subjective deliberate indifference. Even if Dr. Carter did not fully appreciate the seriousness of Mathis's infection on August 30 or precisely identify its type, Dr. Carter at most would have had "merely constructive" knowledge of Mathis's medical condition, not the "actual" knowledge that deliberate indifference requires. *Gevas*, 798 F.3d at 480. Equally if not more important, Dr. Carter cannot be said to have disregarded Mathis's medical need. Dr. Carter did not fail to treat Mathis, and the treatment he offered—a broad-spectrum antibiotic at first, followed by a topical antibiotic two weeks later, followed by an examination two weeks after that—cannot reasonably be deemed "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). In fact, there is no record evidence to suggest that Dr. Carter's treatment aggravated Mathis's condition; to the contrary, the record shows that the condition resolved in the weeks after Mathis began taking the prescribed medication. Doc. 182 at ¶¶ 53-55; Doc. 185 at ¶ 25.

In an effort to avoid this conclusion, Mathis submits excerpts from medical websites, Docs. 181-1, 181-2, 181-3, 181-4, a medical journal article, Doc. 181-5, and an expert report about conditions at Stateville prepared for another lawsuit, Doc. 181-6. As Carter and Logan correctly argue in their motion to strike, Doc. 188, those materials are inadmissible hearsay and therefore may not be considered on summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."); *Morrow v. Wal-Mart Stores, Inc.*, 152 F.3d 559, 563 (7th Cir. 1998)

8

("Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial.").

The website excerpts are inadmissible hearsay under Federal Rule of Evidence 801 because they are out-of-court statements offered to prove the truth of their contents, and Mathis does not attempt to fit them within a hearsay exception. *See United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (holding that website postings are hearsay). As for the journal article, Mathis invokes Rule 803(18), which carves this exception to the hearsay rule: "A statement contained in a treatise, periodical, or pamphlet if: (A) the statement is called to the attention of an expert witness on cross-examination or relied on by the expert on direct examination; and (B) the publication is established as a reliable authority by the expert's testimony, by another expert's testimony, or by judicial notice." Fed. R. Evid. 803(18). Mathis does not introduce the journal article through expert testimony, nor does he establish it as a reliable authority, so it is inadmissible hearsay as well. *See In re C.R. Bard, Inc.*, 810 F.3d 913, 924-25 (4th Cir. 2016) (holding that the district court abused its discretion by admitting a document under Rule 803(18) where "no witness testifying at trial ever sought to demonstrate [its] reliability").

As for the expert report, Doc. 181-6, Mathis invokes the hearsay exception for public records under Rule 803(8)(A)(iii). The Rule creates a hearsay exception for "[a] record or statement of a public office if: it sets out … factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). According to Mathis, the expert report is a "record or statement of a public office" because it was prepared by Dr. Ronald Shansky, an expert witness appointed by the court under Rule 706, at the parties' joint recommendation, in *Lippert v. Godinez*, 10 C 4603, Dkt. 244 (N.D. Ill. Dec. 19, 2013). Doc. 181-6 at 2, 4; Doc. 198 at 8. In support, Mathis cites *Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016), which held that a

9

Department of Justice investigatory report regarding medical care at Cook County Jail satisfied the "public office" requirement of Rule 803(8). *Id*. at 740. But unlike the Department of Justice in *Daniel*, the authors of the *Lippert* report do not hold any public office, which means that the report is not a "record or statement of a public office," as Rule 803(8) requires. *See United States v. Blackburn*, 992 F.2d 666, 672 (7th Cir. 1993) (holding that if the persons who prepared the reports in question were "not the equivalent of government investigators, then [their] reports were not records of public offices") (internal quotation marks omitted); *Abscal v. Fleckenstein*, 820 F.3d 561, 566 (2d Cir. 2016) (holding that a prison monitoring report "is not a record or statement from a public office" because the association that drafted it "is not a public agency"); *cf*. *Daniel*, 833 F.3d at 743 (holding that a different report prepared by Dr. Shansky in connection with his service as a federal court monitor at Cook County Jail was inadmissible hearsay, though the proponent invoked only the Rule 803(1) exception for present sense impressions).

Finally, Mathis relies on *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015), to support admission of the website excerpts and journal article. Doc. 198 at 1. The Seventh Circuit in *Rowe* reversed the grant of summary judgment to the defendants in a medical deliberate indifference case, citing "highly reputable medical websites in support of [its] conclusion that summary judgment was premature." 798 F.3d at 628. *Rowe* did not address, let alone establish, the admissibility of the websites it referenced; in fact, *Rowe* did not even acknowledge that the websites were hearsay. But *Rowe* did not have to, as the websites were superfluous to the decision. As the Seventh Circuit explained, "[the plaintiff's] allegations alone, coupled with … other defense evidence, would be enough without any reference to the Internet to preclude summary judgment for the defendants." *Id*. at 632. *Rowe* therefore does not stand for the

10

proposition that a party may rely on website excerpts or other hearsay materials to defeat summary judgment.

All that said, the website excerpts, journal article, and expert report submitted by Mathis would not forestall summary judgment even if they were admitted. At most, those materials bolster Mathis's assertion that he suffered from an objectively serious medical condition and raise an inference that Dr. Carter's care was negligent. As noted, however, the court has assumed that Mathis's condition was objectively serious, and negligent medical care does not amount to deliberate indifference. *See Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) ("Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless.").

Accordingly, a reasonable jury could not find that Dr. Carter acted with the requisite state of mind to satisfy the subjective element of Mathis's Eighth Amendment claim.

### B. Warden Hardy and Assistant Warden Edwards

Drawing all reasonable inferences in Mathis's favor, the facts of Hardy's and Edwards's involvement in Mathis's care is as follows. Beginning on August 23, Mathis informed Hardy and Edwards in writing that he had written to Dr. Carter to ask to be seen about an infection in his chest but had not yet been examined. Doc. 192 at ¶¶ 4-5; Doc. 185 at ¶ 9. Mathis submitted an emergency grievance on August 25 to the Warden's office, stating that he needed to see a doctor. Doc. 185 at ¶ 12. At some point over the next week, Hardy and Edwards had a face-to-face interaction with Mathis in which Hardy told Mathis that he would "take care of it." *Id*. at ¶ 26. Mathis was seen by a nurse on August 28, at which point his chart reflected that he was not experiencing a medical emergency. *Id*. at ¶¶ 16-18. Dr. Carter examined Mathis on August 30

and prescribed an antibiotic to treat a potential infection.  *Id*. at ¶ 20.  The next day, the Warden's office declined to treat Mathis's grievance as an emergency.  *Id*. at ¶ 22.

The only reasonable conclusion here is that Hardy and Edwards declined to treat Mathis's grievance as an emergency because his complaint that he had not been examined had been resolved.  Indeed, the only record evidence that speaks to Hardy's or Edwards's state of mind—Hardy's statement that he would "take care of it"—cuts against an inference of deliberate indifference, as the problem that Mathis brought to their attention was "taken care of" in less than a week.  At most, then, Hardy's and Edwards's failure to secure an immediate doctor's appointment for Mathis could be considered an isolated instance of delay, which does not amount to deliberate indifference.  *See Walker*, 233 F.3d at 501 (explaining that "isolated incidents of delay … cannot be construed to be deliberate indifference"); *Gutierrez*, 111 F.3d at 1375 (same for "isolated instances of neglect … taken alone or collectively").

## Conclusion

Defendants' summary judgment motions and motion to strike are granted.  The claims against Logan are dismissed without prejudice, while the claims against Carter, Hardy, and Edwards are dismissed with prejudice.  Judgment will be entered.  The court expresses its appreciation to Fredrick Rahn Harbecke, the attorney recruited to represent Mathis, for his very able service to his client and, by extension, to the court.

January 5, 2017

United States District Judge